# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS M. LORIGO, | Case No. 1:13-cv-00405-SKO |
| Plaintiff, | |
| v. | **ORDER REGARDING PLAINTIFF'S COMPLAINT** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## **BACKGROUND**

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 15.)

**FACTUAL BACKGROUND**

Plaintiff was born in 1956, completed the eleventh grade, and previously worked as a field inspector, cabinet maker, dipper/coater, fabricator/assembler, and medical equipment repairer. (Administrative Record ("AR") 18, 33, 36.) Plaintiff fell while working on October 1, 2008. (AR 586.) On February 27, 2009, Plaintiff got into an argument with his supervisor and fainted at work. (AR 310, 587.) On May 1, 2009, Plaintiff filed an application for DIB, alleging disability due to conditions with his back, left hip, and left thumb, as well as anxiety and depression. (AR 12.)

### A. Relevant Medical History

Plaintiff sought treatment for low back and hip pain from Tarlochan Tagore, M.D., no later than January 2008. (AR 564, 584.) After his fall on October 1, 2008, Plaintiff continued treatment with Dr. Tagore through May 2009. (AR 570.) Dr. Tagore's reports reflect treatment for Plaintiff's back and hand pain consisting of prescription medications. (AR 570-84.) Dr. Tagore referred Plaintiff to an orthopedist and a neurologist. (AR 587.)

Plaintiff underwent several diagnostic tests. In September 2008, Plaintiff underwent magnetic resonance imaging ("MRI") of his left hip showing a cyst and probable tearing of the labrum (AR 283), and an x-ray of the left hip the same month showed early osteoarthritis (AR 564). In September 2008 and January 2009, Plaintiff had an MRI of his lumbar spine that showed moderate stenosis at L4-5 (AR 284, 670), and an x-ray of the lumbar spine in September 2009 showed mild degenerative changes. (AR 565.) In March 2009, Plaintiff had a nerve conduction study indicating possible L5-S1 radiculopathy. (AR 305.) In April 2009, he had an x-ray of the left fingers that indicated mild to moderate osteoarthritic changes (AR 568), while an October 2009 MRI of the left hand was normal (AR 413).

Plaintiff fainted at work on February 27, 2009, and was referred by his employer to Kourosh Noormand, M.D., who treated Plaintiff from March 2009 through March 2010. (AR 425-68, 641-60.) Upon examination, Dr. Noormand noted that Plaintiff had decreased range of motion in his lumbosacral spine, wrists, and knees. (*e.g.*, AR 463-64, 645.) Dr. Noormand provided epidural injections in July, September and December 2009, noting that the injections had

2

good results. (AR 424, 449, 455.) Also, Dr. Noormand assessed in December 2009 that Plaintiff's medications helped alleviate his symptoms. (AR 426.) In March 2010, Dr. Noormand determined that Plaintiff had reached maximum medical improvement. (AR 646-47.) In June 2011, Dr. Noormand reported Plaintiff's functional limitations, stating that Plaintiff was unable to sit, walk, or stand for a full work day. (AR 663.)

In August and December 2009, Justin Frieders, D.C., reviewed Plaintiff's medical records and examined Plaintiff. (AR 414-21, 586-96.) In his December report, Dr. Frieders noted that although Plaintiff alleged the injury was cumulative from his employment activities from February 27, 2008, through February 27, 2009, his wrist and thumb injury caused an inability to work only after he had an argument with his supervisor, and Plaintiff was previously able to work with no modifications. (AR 420-21.) Dr. Frieders stated that there were "inconsistencies between [Plaintiff's] subjective and objective findings." (AR 420.)

In August 2009, State agency non-examining physician, J. Mitchell, M.D., reviewed the medical record and assessed that Plaintiff was limited to light work with frequent postural limitations. (AR 370-75.) A second State agency physician, C. De La Rosa, M.D., reviewed the record and concurred with Dr. Mitchell's opinion in March 2010. (AR 545-52.)

Tushar Doshi, M.D., examined Plaintiff in February 2010. (AR 469-77.) Dr. Doshi noted some decreased range of motion in the left wrist, and diagnosed a left wrist and thumb sprain and osteoarthritis of the left thumb. (AR 473-74.)

In February 2010, William Di Fiore, D.C., provided a "functional capacity evaluation" for Plaintiff's worker's compensation claim. (AR 599-610.) Dr. Di Fiore determined that Plaintiff could occasionally carry 10 pounds in each hand or lift 20 pounds from the waist, and infrequently bend or crawl. (AR 607.)

In March and May 2010, Edward Giaquinto, Ph.D., assessed Plaintiff's mental state. He diagnosed Plaintiff with anxiety disorder (AR 485-89) and major depression (AR 505). Dr. Giaquinto determined Plaintiff had reached maximum medical improvement with regard to his mental condition (AR 478-510), and stated that Plaintiff "should be able to return to his usual

occupation soon," but that if symptoms persist or worsen he may need to seek "another, perhaps less stressful, line of work" (AR 492, 508).

In April 2010, Clifford Feldman, M.D., a psychiatrist, provided a report indicating that Plaintiff had reached psychiatric maximum medical improvement. (AR 553-62.) Dr. Feldman diagnosed Plaintiff with anxiety disorder and pain disorder due to events occurring within the workplace (AR 555, 560), and stated that Plaintiff "should be able to return to the usual occupation soon" (AR 560).

Plaintiff sought treatment with Community Medical Centers ("Community") for back pain from December 2011 to May 2012. (AR 690-725.) Community treated Plaintiff with prescription medications. (AR 690-716.) Plaintiff had another MRI of his back on February 8, 2012, which revealed a degenerative disease with underlying congenital narrow canal with moderate to severe spinal canal stenosis. (AR 698.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 79, 89, 95.) On June 28, 2011, the ALJ held a hearing during which Plaintiff testified, represented by counsel. (AR 27-51.)

**1.     Plaintiff's Testimony**

Plaintiff appeared at the hearing held on June 28, 2011. (AR 27-60.) Plaintiff stated that he is married with seven children, one of whom lives at home. (AR 32.) He has no problem accomplishing his personal care, but sometimes he does not feel like grooming due to depression and anxiety. (AR 34.) He drives a car, does some household chores, and does a little shopping. (AR 33-34.) He does not participate in social activities like church or visits with family or friends, but he likes collecting sports cards and figurines. (AR 34.)

He experiences pain in his back and leg, which is most uncomfortable when walking, and the only comfortable position for him is lying down. (AR 39.) He has arthritis in his left thumb and he uses a brace. (AR 40.) He can lift 20 pounds, sit for an hour, stand for 10 minutes, and walk up to a block. (AR 43.) He feels useless and suffers from anxiety and depression. (AR 44,

45, 49.) When his pain is at its worst, his day consists of lying down and elevating his left leg. (AR 51.)

### 2. Vocational Expert Testimony

Judith Narjarian, a vocational expert ("VE"), testified at the hearing. (AR 51-59.) Relying upon the Dictionary of Occupational Titles ("DOT"), Ms. Najarian testified that Plaintiff's past jobs were best classified as a cabinet maker, field inspector, dipper/coater, fabricator/assembler, and medical equipment repairer. (AR 52-54.)

The ALJ presented the VE with several hypotheticals. In the first hypothetical, the ALJ asked the VE to assume a hypothetical person of the same age, education, and work background as Plaintiff, who could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk six hours with occasional stooping and climbing ladders, ropes, and scaffolds; and frequent climbing, crouching, crawling, squatting, balancing; and needed to wear a brace for his thumb on his non-dominant hand. (AR 55.) The VE stated that the hypothetical person could work as a field inspector, but could not perform Plaintiff's other past work. (AR 56.)

The ALJ posed a second hypothetical, again asking the VE to assume a person of the same age, education, and work history as Plaintiff; with the ability to sit, stand, and walk for six hours and occasionally stoop, crouch, crawl, climb, or squat; but who is limited to no forcible gripping or grasping with the left upper extremity. (AR 56.) In response to this second hypothetical, the VE stated that none of Plaintiff's past work would fit that hypothetical, but other light jobs such as a marker, mail sorter/clerk, or sales attendant would be suitable. (AR 56-57.)

The ALJ then posed a third hypothetical, adding to the characteristics of the second hypothetical a sit/stand option and a limitation to simple, routine tasks. (AR 57.) The VE stated that all the jobs from the second hypothetical would be unavailable. (AR 57.) However, a reduced portion of the following jobs remained feasible given the third hypothetical: cashier and cashier II, storage facility clerk, and courier/light delivery. (AR 57-8.)

Finally, the ALJ asked the VE to suppose the same hypothetical person as in the third hypothetical, but also indicated the hypothetical person would miss work at least four days per month. (AR 58.) The VE replied that no jobs would be available given that additional limitation.

(AR 58.) The ALJ asked if any of Plaintiff's skills from past work were transferrable, and the VE testified they would not be transferrable to light work. (AR 58.)

### 3. ALJ Decision

On July 7, 2011, the ALJ issued a decision, finding Plaintiff not disabled. (AR 20.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 27, 2009, the disability onset date. (AR 12, ¶ 2.) The ALJ also found that Plaintiff suffers from severe impairments of lumbar degenerative disc disease, left hip degenerative joint disease, left thumb osteoarthritis, anxiety and depression. (AR 12, ¶ 3.) The ALJ concluded that Plaintiff's severe impairments do not, either individually or in combination, meet or equal any condition listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Listing of Impairments). (AR 12, ¶ 4.)

The ALJ further determined that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to lift and carry 20 pounds occasionally and 10 pounds frequently, and to sit, stand, and walk six hours each in an eight-hour day with a sit/stand option. The ALJ determined Plaintiff can occasionally stoop and climb ladders, ropes and scaffolds, and frequently climb, balance, kneel, crouch and crawl. The ALJ also determined that Plaintiff needs to wear a brace for his left thumb, on his non-dominant hand, and that he cannot forcefully grip or grasp with his left upper extremity. The ALJ noted that Plaintiff can perform simple routine tasks. (AR 14, ¶ 5.) The ALJ determined that Plaintiff could not perform past relevant work (AR 18), but, based on testimony from the VE, he could perform alternative work activity as a cashier II, storage facility clerk, or courier (AR 19).

The ALJ concluded that Plaintiff was not disabled since May 1, 2009, when Plaintiff filed his application for DIB. (AR 20.) Plaintiff sought review of this decision before the Appeals

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Council, and the Appeals Council denied the request for review. (AR 1-6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind

of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity ("RFC") despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## **DISCUSSION**

Plaintiff asserts that the ALJ failed to give legally sufficient reasons for finding his subjective testimony not credible. (Doc. 20, 11.) Plaintiff also claims that in relying on the testimony of the VE, the ALJ incorrectly found Plaintiff able to perform the identified alternative occupations of cashier II, DOT No. 211.462-010; storage facility clerk, DOT No. 295.367-026; and courier, DOT No. 230.663-010. (Doc. 20, 3.)

**A.    The ALJ Properly Weighed Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for not finding fully credible his subjective testimony. (Doc. 20, 9, 11.) Plaintiff asserts the ALJ did not conduct the mandatory two-step analysis in assessing his subjective symptoms (first determining whether

there exists an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the Plaintiff's pain or other symptoms; second, evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which the symptoms limit his ability to do basic work activities). (Doc. 20, 12.)

### 1. Legal Standard

An ALJ must engage in a two-step analysis in evaluating the credibility of a claimant's testimony regarding subjective pain. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2. Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 15.) Where the record supports the existence of a medical condition that is reasonably likely to produce the subjective symptom, and no evidence of malingering exists, the Commissioner bears the burden of articulating clear and convincing reasons for rejecting the claimant's testimony regarding his subjective symptoms. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

    **a.    The ALJ Properly Determined the Objective Medical Evidence Did Not Fully Support Plaintiff's Subjective Complaints**

Plaintiff claims the ALJ discounted his testimony because it lacks support in the objective medical evidence, which Plaintiff asserts is not a legally sufficient basis to reject his testimony. (Doc. 20, 14-5.) Plaintiff asserts that where the record supports the existence of a medical condition that is reasonably likely to produce the subjective symptom, and no evidence of malingering exists, the ALJ has the burden of articulating clear and convincing reasons for rejecting the claimant's testimony regarding his subjective symptoms. (Doc. 20, 15.) Finally, according to Plaintiff, the ALJ failed to offer legally sufficient rationale why Plaintiff's testimony regarding his lack of ability to work is not credible. (Doc. 20, 16.)

Defendant replies that the ALJ reasonably found Plaintiff's subjective statements less than credible, and provided reasons for that finding which are supported by substantial evidence. (Doc. 22, 6-7.) Defendant claims the ALJ supported a finding that Plaintiff was not fully credible by noting that Plaintiff's objective medical evidence did not support the degree of disability alleged by Plaintiff. Specifically, the ALJ cited the contrast in diagnostic testing showing mild or moderate conditions with Plaintiff's subjective statements. (Doc. 22, 7.) Defendant argues that the ALJ performed a detailed credibility analysis and gave valid reasons for finding Plaintiff's subjective testimony less than credible. (Doc. 22, 9.)

Here, the ALJ noted:

> In terms of the claimant's alleged back and thumb pain, both came on gradually and neither have required surgical intervention. The claimant's back pain was reported as improved after his third epidural injection. As noted above, the diagnostic studies of the back reflect mild osteoarthritis changes. Chart notes from physical therapy note improvement in muscle spasms, range of motion and weakness. Dr. Noormand at the time he declared the claimant permanent and stationary (for purposes of workers compensation) opined the claimant would have flare-ups 3 to 4 times a years that may require treatment by a chiropractor or physical therapist. Dr. Lewis with Cal Care referred to the claimant as a poor historian. He also indicated surgery would be an option to fuse a joint in the left hand if claimant's condition did not improve. There is no indication in the medical evidence of record of any surgery or fusion for the claimant's thump. A [sic] MRI in October 2009 was unremarkable and an X-ray in April 2009 had the impression of mild to moderate osteoarthritic changes in the left fingers. Dr. Frieders opined in December 2008 that there was overlapping between a [sic] October 2008 specific injury and the alleged cumulative trauma injury to February 27, 2009 such that the confusion compromised the overall integrity of both claims and provided no assessment of any physical limitations.

(AR 16.)

The ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints, and offered specific examples of the discrepancy. Given the evidence on the record, the ALJ could reasonably infer that Plaintiff's complaints were not as severe as he testified. *Tommasetti*, 533 F.3d at 1041 (ALJ may draw reasonable inferences from the record).

Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, in combination with the other reason for discounting Plaintiff's testimony discussed below, the ALJ's finding that Plaintiff's subjective testimony should be afforded only partial weight is adequately supported.

### b. The ALJ's Reasoning in Discrediting Plaintiff Based on his Daily Activities Was Supported by the Record and Sufficiently Specific

Plaintiff testified he has no problem accomplishing his personal care, but sometimes he does not feel like grooming due to depression and anxiety. (AR. 34.) He drives a car, does some

household chores, and does a little shopping. (AR 33-34.) He does not participate in social activities like church or visits with family or friends, but he likes collecting sports cards and figurines. (AR 34.)

In response to Plaintiff's assertion that the ALJ did not adequately conduct the two-step analysis for discounting Plaintiff's subjective symptom testimony,[3] Defendant asserts the ALJ observed that Plaintiff's subjective pain complaints and his statements concerning his ability to perform daily activities were not consistent. (Doc. 22, 7 (citing AR 15).) Defendant notes the ALJ discussed that Plaintiff testified his wife is disabled, and his wife had stated that he helped take care of her. (Doc. 22, 8 (citing AR 16).)

An ALJ can appropriately consider Plaintiff's activities of daily living in determining that he was not entirely credible, but the mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. *See Thomas*, 278 F.3d at 958-59; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).

Here, the ALJ noted, "The claimant has described daily activities, which are not as limited as one would expect, given his complaints of disabling symptoms and limitations." (AR 16.) The

---

[3] Plaintiff also argues the ALJ cannot find Plaintiff's testimony both credible and not credible. Specifically, Plaintiff argues that the ALJ credited his testimony about what he can do in demonstrating non-disability, while at the same time ignoring Plaintiff's testimony describing how he performs these activities to establish his inability to work. (Doc. 20, 18-9.) The Court disagrees: the rule is that a court may find testimony credible in part, or not at all, but not solely based on the objective medical evidence. *See Robbins,* 466 F.3d at 883 (" . . . [A]n ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); s*ee also* Social Security Ruling 96–7p, 1996 WL 374186, at *1; *Light,* 119 F.3d at 792. That is not the case here, as discussed throughout this section.

ALJ noted Plaintiff's wife's statement that he helps with her care. Her testimony indicates that Plaintiff takes care of his grooming, helps at times with the dishes and shopping, and hangs his shirts. Plaintiff's wife also testified that Plaintiff attends family social events, in contrast to Plaintiff's testimony. (AR 16.) The extent of Plaintiff's daily activities was a sufficient reason to discount Plaintiff's testimony regarding his symptomology. Not only is he able to perform a range of household tasks, he is able to care for his disabled spouse. (AR 33-34, 16.)

"Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)(citation omitted). As the ALJ's reasons were properly supported by the record and sufficiently specific, the Court concludes that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010).

### c. The ALJ Rejected Plaintiff's Testimony on Permissible Grounds

In sum, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). If, as here, the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the Court's role to "second-guess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity and limiting effects of his symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

///

///

///

### B. The ALJ Erred by Not Assessing the Discrepancy Between the VE's Testimony and the DOT's Classification

Plaintiff contends the ALJ's assessed RFC precludes the performance of the identified alternative work at Step Five of the sequential disability analysis. (Doc. 20, 4.)

#### 1. Legal Standards

At Step Five of the sequential evaluation, the burden shifts to the Commissioner to show that the claimant can perform other jobs that exist in the national economy. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007). To meet this burden, the Commissioner "must identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite [his] identified limitations." *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir.1999) (citation and internal quotation marks omitted).

There are two ways for the Commissioner to meet this burden: "(a) by the testimony of a vocational expert, or (b) by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Tackett*, 180 F.3d at 1099; *accord Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). However, "[w]hen [the Grids] do not adequately take into account [a] claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002).

At this stage, the ALJ should consider the claimant's RFC and vocational factors such as age, education, and past work experience. 20 C.F.R. § 416.920(f).

#### 2. Analysis

Plaintiff asserts that the ALJ incorrectly relied on the testimony of the VE in finding that Plaintiff can perform the identified alternative occupations of cashier II, storage facility clerk, and courier. (Doc. 20, 3.) Plaintiff claims that the occupations identified by the VE conflict with the DOT, which is the primary source upon which the Commissioner and ALJs must rely. Specifically, the ALJ determined Plaintiff requires a sit/stand option, posed this limitation to the VE, and the VE testified that the hypothetical person could perform a reduced portion of the three

14

identified jobs. The VE also indicated the reductions were consistent with the DOT. However, the DOT does not contain a sit/stand option as posed in hypothetical three in the hearing. (Doc. 20, pp. 4, 8.)

Because the DOT does not encapsulate a sit/stand option, Plaintiff argues the VE's testimony regarding jobs with a sit/stand option automatically deviates from the DOT. Plaintiff further claims that to deviate from the DOT, the ALJ must elicit a reasonable explanation for the conflict between the DOT and the VE, and the record must contain persuasive evidence demonstrating as much. (Doc. 20, pp. 4, 6.) Plaintiff asserts that the ALJ did not ask for, and the VE did not offer, a basis for deviating from the DOT, and the Commissioner was required to obtain something more than "unexplained rationale" for the deviation. (Doc. 20, 7.) Plaintiff contends that failing to obtain an explanation of the conflict with the DOT violates the binding policy of Social Security Ruling 00-4p and constitutes reversible error. (Doc. 20, 7.)

Defendant contends that the ALJ properly relied on the VE's testimony in finding that Plaintiff had the capacity to adjust to other work at Step Five of the sequential evaluation. (Doc. 22, 5.) Defendant asserts the job requirements of the three representative jobs identified by the ALJ at Step Five do not conflict with Plaintiff's functional limitations, and that the VE specifically accounted for a sit/stand option by eroding the number of jobs to account for Plaintiff's limitations in her testimony. (Doc. 22, 5-6.) Defendant states that this provides the substantial evidence necessary to support the ALJ's findings, and that the ALJ was entitled to rely upon the testimony of the VE. (Doc. 22, 5-6.) Defendant replies that the VE explicitly eroded the number of jobs to account for Plaintiff's limitations. (Doc. 22, 6.) Defendant asserts that the VE testimony is substantial evidence because the VE stated her testimony was consistent with the DOT, and the ALJ was entitled to rely upon the testimony because it specifically addressed Plaintiff's functional limitations. (Doc. 22, 6.)

    **a. The VE Did Not Resolve the Apparent Conflict Between the VE's Testimony and the DOT**

The ALJ found Plaintiff had the RFC to perform "light work," but with additional restrictions of being able to "sit, stand, and walk for 6 hours each in an 8-hour day with a sit/stand

option. [Plaintiff] can occasionally stoop and climb ladders, ropes, or scaffolds and frequently climb, balance, kneel, crouch and crawl. He needs to wear a brace for his left thumb, on his non-dominant hand. He cannot forcefully grip or grasp with his left upper extremity. He can perform simple routine tasks." (AR 14.)

At the hearing, the ALJ posed a hypothetical, asking the VE to assume a person of the same age, education, and work history of Plaintiff; with the ability to sit, stand, and walk for six hours and occasionally stoop, crouch, crawl, climb, or squat; allotting basically no forcible gripping or grasping with the left upper extremity; and with a sit/stand option. The VE replied that such a person could not perform Plaintiff's prior work, but that "we could look at a reduced portion of cashier II . . . storage facility clerk . . . and . . . a courier/light delivery." (AR 57-8.)

By referencing the DOT, the VE found that the recommended jobs would allow for a sit-stand option. (AR 57-58.) However, the DOT does not discuss the availability of a sit/stand option. *Buckner-Larkin v. Astrue*, 450 Fed. App'x 626, 628-29 (9th Cir. 2011) (unpublished). Thus, the VE's testimony that encapsulated a sit/stand option automatically deviated from the DOT. The VE did not specifically cite to or note that her opinion was based on anything other than the DOT in determining that the occupations were performable in light of a sit/stand option. (AR 57-8.)

Social Security Ruling 00-4p provides that, before relying on VE testing to support a disability determination or decision, the ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Social Security Ruling 00-4p.[4] The ALJ thus has an "affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT," and, if the "evidence appears to conflict with the DOT, the [ALJ] will obtain a reasonable explanation for the apparent conflict." *Id*. Accordingly, "the ALJ

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

16

must first determine whether a conflict exists.  If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the *Dictionary of Occupational Titles*."  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007).

Although the ALJ asked the VE if "[her] testimony [was] consistent with the DOT with [her] reductions," (AR 58), the VE's response was not adequately responsive.  The VE replied, "Reductions and also…my explanation of what I couldn't hit…I got close, I think."  (AR 58-59.)  The ALJ did not ask, and the VE did not give, any basis for the source of her numbers of available jobs, explain the basis for her reductions, or indicate how much she reduced the numbers of available jobs based on the limitations of the hypothetical.

In *Massachi*, the Ninth Circuit upheld the ALJ's reliance on similar VE testimony.  The court explained, "[t]he district court . . . was aware that the vocational expert's testimony deviated from the *Dictionary of Occupational Titles,* but justifiably relied on the expert's testimony because the expert gave 'persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant.' As a result, the vocational expert's testimony left no "unresolved potential inconsistenc[ies] in the evidence."  486 F.3d at 1153.  The Ninth Circuit also found no error in a similar conflict when a VE's testimony was expressly based on his own labor market survey, experience, and research.  *Buckner-Larkin v. Astrue*, 450 Fed. App'x 626, 629 (9th Cir. 2011).

This case is distinguishable from *Massachi* and *Buckner-Larkin.*  As discussed above, unlike the VEs in *Massachi* and *Buckner-Larkin*, the VE in this case did not include in her testimony any explanation of how she arrived at or reduced available job numbers to account for the necessary sit/stand option.  The ALJ erred by relying on the VE's testimony regarding the jobs

17

available that Plaintiff could perform because the apparent conflict between the VE's testimony and the DOT's classification was not resolved in the hearing.  (AR 19.)

### b. The ALJ's Failure to Resolve the Inconsistency Between the VE's Testimony and DOT Was Not Harmless Error

Because the ALJ accepted the VE testimony without soliciting testimony to justify a departure from the DOT, the ALJ failed to perform the procedural requirements set forth in Social Security Ruling 00-4p. "Error in failing to follow [Social Security Ruling] 00–4p is harmless only if: 1) there was no conflict; or 2) the VE provided sufficient support for his conclusion to justify any potential conflicts." *Edwards v. Astrue,* No. 4:12–cv–02056–KAW, 2013 WL 1891764 (N.D. Cal. May 6, 2013) (citing *Massachi*, 486 F.3d at 1153–54).  The Court thus cannot determine whether substantial evidence supports the ALJ's step-five finding that Plaintiff could perform other work; thus the error is not harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (ALJ error is not harmless unless it is irrelevant to the nondisability finding; "[a] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

## C. Remand is Required

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id*. (alteration in original) (internal quotation marks omitted).  On the other hand, "[w]here there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

appropriate." *Allen*, 2010 WL 4825925, at *8 (C.D. Cal. Nov. 2, 2010) (remanding the case to the Commissioner after holding that the ALJ had violated the law of the case and the rule of mandate doctrines) (citations omitted).

Here, due to the apparent conflict between the VE's testimony regarding jobs available with a sit/stand option and the DOT, the Commissioner did not adequately satisfy the Step Five burden of establishing that work existed in significant numbers in the national economy that Plaintiff could perform. Because there is a deviation from the DOT, there must exist persuasive evidence in the record itself, which may be evidenced by the ALJ inquiring into the VE's reasons for identifying jobs in which there is a deviation between a claimant's exertional abilities, as set forth in the hypothetical question, and the jobs actually identified. Failing to obtain an explanation of the conflict with the DOT violates the binding policy of Social Security Ruling 00-4p and constitutes reversible error.

The ALJ's failure to make the required Social Security Ruling 00-4p inquiry was not harmless both because of the potential conflict between VE's testimony and the DOT, as well as the VE's insufficient support for her conclusion that the cited positions offered a sit/stand option. Because the ALJ improperly relied upon the VE's testimony and thus committed a legal error, the case must be remanded for further consideration of this issue.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case is REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Carlos Lorigo and against Defendant Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **April 17, 2014**                         /s/ Sheila K. Oberto
                                                                 UNITED STATES MAGISTRATE JUDGE